<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>MARSHAUN THOMAS,<br><br>*Defendant*. | Crim No. 1-00058 (KSH)<br><br><br><br><u>**OPINION**</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.      Background**

In the extensive history of litigation over the sentence imposed on Marshaun Thomas in 2003, one issue remains, and that is his correct criminal history category ("CHC"). Before the Court now is a motion brought on his behalf by the Office of the Public Defender (D.E. 127), asking for an adjustment from CHC II to CHC I as a consequence of Amendment 821 to U.S.S.G. § 4A1.1(e), which limits the criminal history impact of status points. Thomas had been given two status points because he committed robbery and felony murder charged under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") statute, 18 U.S.C. § 1962(c), while he was on probation.

The Court originally gave Thomas a sentence of 360 months; later, the term was re-set to 280 months on remand from the Third Circuit after *United States v. Booker*, 543 U.S. 220 (1995) was decided. (*See* D.E. 80, Amended Judgment; D.E. 81, Order.) Both times, the Court determined Thomas's past offenses put him in CHC II with three criminal history points, concluding his prior state drug convictions constituted relevant conduct under the RICO statute and would not be counted for CHC purposes. Thomas's docket reflects appeals and motions he

1

has brought over the years, including applications for post-conviction relief and sentence reduction under the First Step Act. (*See* D.E. 58, 76, 101, 117, 123.) He has litigated in the Third Circuit, which denied his direct appeal based on ineffective assistance of counsel; as indicated granted him a resentencing in light of *Booker*; and affirmed his resentencing to 280 months, which essentially left the original sentence untouched as he had already served 80 months at the time of his resentencing.

The lengthy transcripts of both sentencing hearings described the most serious offense, felony murder, that Thomas pleaded guilty to and established his years as a youthful gang member who found home and family in gang life and the streets. That lifestyle led to the night he shot and killed a young man, a stranger, who was walking home from work with a group of friends. Thomas's actions were heedless and brutal. As the Court noted during the sentencing hearing:

> Mr. Thomas [at] the time of that offense was consistently smoking PCP, dipping marijuana cigarettes into PCP, staying on a high on a regular basis and a high that created circumstances of a crime when he decided to leave the car and approach that group and order four young men, four young men who were young and strong and [had] their own dignity to their knees as if he were their executioner.

(10/22/03 Sentencing Tr., at 55:25-56:6.)

Thomas has been in prison for over 20 years now, with an anticipated release date of February 2028. *See* https://www.bop.gov/inmateloc/ (last visited Aug. 18, 2025). He is not asking this Court to change his prison term; that is made very clear in his counseled application. (D.E. 127, 131.) Amendment 821's effect on the quality of the time he has left to serve is his focus: a reduced CHC "can impact certain assessment tools utilized by" the Bureau of Prisons ("BOP"). (D.E. 127, Motion, at 3.) Which calls to mind 18 U.S.C. § 3553(a)(2)(D), easily the most passed over section of the sentencing statute: the need for a sentence imposed "to provide

the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Which in turn calls to mind how long Thomas has served, and the importance to his re-entry into society at about the age of 50 and what the BOP has to offer him consistent with that statutory mandate.

Thomas's criminal history points have remained a vexing subject he has brought up before; arguably Amendment 821 is the last hill on which to resolve the issue. As far back as his sentencing hearing in 2003 there was confusion. (*See* D.E. 123 and attachments.) Among his motions for post-conviction relief he raised the BOP's erroneous application of nine, not three, criminal history points that he claims had an impact on his eligibility for prison programs and his classification for years to high security incarceration. (*See* D.E. 117, denied as untimely at D.E. 122.) The Court ordered the government to address the issue after Thomas once again sought correction. (D.E. 123, 124, 125.) At that juncture, Thomas's counseled formal motion invoking Amendment 821 was filed. (D.E. 127.) At the Court's direction (D.E. 129) the government filed a response (D.E. 130), to which Thomas filed a reply (D.E. 131). The operative submissions on this motion, therefore, are D.E. 127, 130, and 131.

**II.     Discussion**

On November 1, 2023, Amendment 821 to the sentencing guidelines became effective and altered the "status points" provision of the guidelines. The amendment states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1(e). The Sentencing Commission has stated that Amendment 821 applies retroactively. *Sentencing Guidelines for the United States Courts*, 88 Fed. Reg. 60534 (Sept. 1, 2023).

The corollary is that no status points are applied if the defendant has less than seven points. Neither the government nor the BOP disputes that Thomas has less than seven points. So the two status points previously applied are now retroactively inapplicable. While status points drive up a defendant's CHC and thus receive attention at sentencing, they also play a significant role once he is in the custody of the BOP. Thomas's moving brief attaches the Male PATTERN Risk Scoring Sheet (the **P**risoner **A**ssessment **T**ool **T**argeting **E**stimated **R**isk and **N**eeds) (D.E. 127, Ex. A), the risk and needs assessment system the BOP adopted under the First Step Act. As can be seen on Exhibit A, two to three criminal history points adds eight points to the inmate's general score and 0-1 point adds none.

In his motion papers, Thomas relies on *United States v. Bean*, 759 F. Supp. 3d 306 (D.N.H. 2024), with good reason. The district court there addressed the defendant's PATTERN score and determined it "could be used by BOP to reclassify [the defendant's] risk of recidivism to a lower category." *Id.* at 310. This reclassification could "impact [the defendant's] ability to apply earned-time credits to his sentence and obtain other administrative relief." *Id.* The decision collected cases addressing the impact of Amendment 821, acknowledging there was a split in the holdings, even within the First Circuit, about whether a court could act in a context outside of imposing sentence. *See id.* at 310-11 (citing cases). On that point, *Bean* helpfully cited to standing orders issued by the District of Alaska and the District of Nevada that invite litigants to apply for "retroactive reduction of criminal history points for eligible defendants pursuant to Amendment 821 regardless of whether a reduction in criminal history points would change the defendant's sentencing guidelines range or reduce the defendant's sentence." *Id.* (citing Miscellaneous General Order 24-02, *In re: Requests for Retroactive Application of*

*U.S.S.G. Amendment 821 to Reduce Criminal History Points*, at *1 (D. Alaska Sept. 9, 2024)[1]; General Order 2024-01, *In re: Recalculation of Criminal History Points*, at *1-2 (D. Nev. June 28, 2024)[2]). These districts recognize that Amendment 821 "lowers the criminal history points for defendants who may or may not separately qualify for a sentence reduction under 18 U.S.C. § 3582(c)(2)," which "may have administrative consequences for convicted defendants" in BOP custody. Miscellaneous General Order 24-02, at *1; General Order 2024-01, at *1-2.

After a thorough review, the district court in *Bean* concluded it had the authority to issue an order recalculating Bean's criminal history score. 759 F. Supp. 3d at 311. The court recognized that its "authority to modify a *sentence* once it has been imposed is limited," but reasoned that "a defendant's criminal history score or category form no part of the defendant's sentence[;] [r]ather, they are calculations used as part of the process set forth in the sentencing guidelines to arrive at the advisory sentencing guidelines range." *Id.* at 311. And while 18 U.S.C. § 3582 "does not expressly state that courts may retroactively lower a defendant's criminal history score outside the sentence reduction context . . . [it does not] expressly forbid courts from doing so." *Id.* The court also concluded it had jurisdiction to enter such an order, because it had original jurisdiction "over the entirety of the criminal proceeding against [the defendant]." *Id.* at 312-13. And finally, the court acknowledged that its holding does not compel the BOP to lower the defendant's PATTERN score; it merely recognized the retroactive application of Amendment 821 to the defendant's criminal history score and category. *Id.* at 313.

---

[1] Available at: https://www.akd.uscourts.gov/sites/akd/files/MGO%2024-02%20REQUESTS%20FOR%20RETROACTIVE%20APPLICATION.pdf.

[2] Available at: https://www.nvd.uscourts.gov/wp-content/uploads/2024/07/GO-2024-01-Recalculation-of-Criminal-History-Points.pdf.

Much of *Bean*'s reasoning is persuasive, particularly where it distinguishes adjusting a CHC under Chapter 4 of the sentencing guidelines from modifying a sentence. *See id.* at 311. Under the sentencing guidelines *Booker* made advisory and not mandatory, the sentencing judge fashions a sentence in accord with 18 U.S.C. § 3553(a). Under the now familiar three step analysis, the sentencing court begins with the advisory range calculated in the defendant's Presentence Report under a tightly guided set of rules in Chapter 4. Counsel may disagree with how United States Probation calculated a defendant's CHC, which the sentencing court must resolve, but in the end the calculation is inherent in the advisory range and is made in accordance with Chapter 4.[3] As Judge McCafferty wrote in *Bean*, "neither the guidelines range nor the criminal history score themselves are part of the sentence," *id.*, and an adjustment to the CHC is not a sentence modification.

The government characterizes Thomas's motion as seeking an "advisory opinion" or "advisory declaration." (D.E. 130, Opp., at 1, 3.) In its opposition, after reviewing how 18 U.S.C. § 3582(c)(2) works and noting that Thomas is not seeking a reduction of sentence under that statute (*id.* at 2-3), the government gets to the point, undisputed, that what the amendment would change is Thomas's classification within the BOP and concludes "[t]his Court lacks

---

[3] In fact this happened when the Court first sentenced Thomas in 2003, where his defense attorney *and* the government agreed to a correction to the CHC that probation had calculated, and the Court stated: "I am constrained to agree that the criminal history category points are three and Mr. Thomas falls in Criminal History Category 2 which exposes him to a sentencing range of Level 40 between 324 and 405 months. And that is the decision of the Court on that issue." (10/22/03 Sentencing Tr., at 19:13-18.) "That issue" was on the CHC calculation under the guideline rules, not the application of the guidelines in accord with pre-*Booker* sentencing law. After *Booker* was decided the Court applied the same CHC to the newly advisory guidelines and Thomas appealed. The Third Circuit's affirmance, 286 F. App'x 779 (2008), focused on how the sentencing decision properly followed 18 U.S.C. § 3553(a), a clear illustration of how the CHC and the guideline range inform a sentencing decision but are not the sentencing decision itself.

authority to grant this request." (*Id.* at 2-3.) The government's reasoning appears to be that 18 U.S.C. § 3582(c)(2) controls; that this provision only gives the Court authority to reduce Thomas's sentence; and here the Court cannot reduce Thomas's sentence under § 3582(c)(2), nor is he seeking a sentence reduction.

For this proposition the government cites to language in a decidedly inapposite case, *California v. Texas*, 593 U.S. 659 (2021). There, the Supreme Court held that the plaintiffs lacked standing to challenge the individual mandate of the Affordable Care Act—previously held unconstitutional by the district court—noting that the plaintiffs failed to show "that any kind of Government action or conduct has caused or will cause the injury they attribute to" the individual mandate. 593 U.S. at 670. The Court noted in passing that "[t]o find standing here to attack an unenforceable statutory provision would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief.'" *Id.* at 673 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J., dissenting)).

Putting aside the effort it takes to apply this authority to the issue in dispute, what cannot be denied is that Thomas is requesting relief that has a cognizable impact on his PATTERN recidivism risk scoring and eligibility for other administrative relief.

The government moves on to suggest that Thomas has the option of providing information to the BOP about what his CHC would be if he were sentenced after Amendment 821 was passed in 2023 and may seek "any administrative relief that may be available." (D.E. 130, Opp., at 3.) The government goes on to state that "we understand that the BOP is presently considering creating an internal administrative process to evaluate these kinds of claims" without detail. (*Id.*) It further argues that other district court decisions granting the relief Thomas seeks are not "binding precedent," and suggests that in those cases, the government had "mistakenly"

7

not opposed relief. (*Id.* at 3-4.) The government does not explain why those decisions not to oppose, as compared with its decision to oppose here, were "mistakes," and in fact, a closer look at the record of those cases shows that the government deliberately agreed to or declined to oppose the relief. *United States v. Pedroso*, No. 1:22-cr-00239, D.E. 58 (N.D. Ill. Apr. 22, 2024) (ordering a reduction in criminal history points based "[u]pon the agreement of the parties"); *United States v. Freeman*, 2023 WL 9661326, at *1 (W.D. Okla. Dec. 5, 2023) (where the government indicated "it does not oppose a finding that Defendant's criminal history points have been reduced").

Boiled down, the government opposes on the basis that this Court lacks authority under a statute that Thomas is not invoking; fails to address the retroactivity of the amendment and the impact on incarcerated individuals; and concedes that there is no single consensus on the issue presented here.

What is ultimately the point here is what Amendment 821 will do for Thomas – his CHC will go down, permitting the BOP, in its discretion, to lower his PATTERN score by eight points. Amendment 821 gives him the right to that CHC reduction, particularly important now that he is within sight of returning to society. Judge McCafferty wrote persuasively about the concept of ancillary jurisdiction in *Bean*, noting her jurisdiction over the entirety of his criminal proceeding. 759 F. Supp. 3d at 312-13. It is no idle "advisory declaration" to hold that to render complete justice to the parties, the Court may recalculate Thomas's criminal history score and category.

**III.    Conclusion**

Thomas's request (D.E. 127) to reduce his criminal history score and category pursuant to Amendment 821 is granted.  An appropriate order accompanies this opinion.


Dated:  August 18, 2025                                         */s/ Katharine S. Hayden*
                                                                                    Katharine S. Hayden, U.S.D.J.